

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Hal F. Rachal
Assistant County Attorney
Nueces County
Corpus Christi, Texas

Dear Sir:

Opinion No. O-6165
Re: Construction of Senate
Bill 317, Regular
Session, Forty-fifth
Legislature.

Receipt of your opinion request relative to the proper construction of Senate Bill 317, Chapter 182, p. 372, General and Special Laws of the 45th Legislature, is hereby acknowledged.

To make this opinion intelligible within itself, we must quote the facts and questions submitted which are:

"I hereby request the opinion of your department as to the proper construction of Senate Bill 317, Regular Session 45th Legislature in respect to the following matters:

"1. Should the North line of the closed area of Corpus Christi Bay and Laguna Madre be determined by projecting a line due East from a stake or marker on the shore on the northeasterly point of Flour Bluff to a point on Mustang Island, or should it be determined by running a line from said point on Flour Bluff to a stake or marker on Mustang Island, one mile north of Corpus Christi Pass, in the event both of said boundaries should not coincide?

"2. Does the term 'Corpus Christi Pass', as used in Senate Bill 317, mean only that portion of the Pass which connects the Gulf of Mexico with Laguna Madre, or does it mean the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Hal F. Rachel, page 2

-Pass which connects the Gulf of Mexico with
Corpus Christi Bay?

"3. In the event Corpus Christi Pass
means that Pass which connects the Gulf of Mexico
with Corpus Christi Bay, should the stake or
marker, one mile north of said Pass be placed at
a point on Mustang Island one mile as near north
as possible from the point where Corpus Christi
Pass opens into Corpus Christi Bay?  (In this
connection, you will note that a point due north
of such mouth of  Corpus Christi Pass could not be
located on Mustang Island).

"4. Is Senate Bill 317 unconstitutional
in so far as it attempts to close the waters of
Laguna Madre and Corpus Christi Bay because of its
indefiniteness?

"5. In the event of a conviction under
Senate Bill 317, should the net or seine of the
defendant be confiscated and destroyed?

"6. In the event of a conviction under
Senate Bill 317, should the license of the defendant
be revoked?

"I make the following observations in
connection with the above questions?

"If the stake or marker on Mustang Island
is situated one mile north of that portion of
Corpus Christi Pass, which connects the Gulf of
Mexico with Laguna Madre, none of the waters of
Corpus Christi Bay would be within the closed area,
while Section 1 of Senate Bill 317 states in effect
that part of  Corpus Christi Bay is within the
closed area;  furthermore, a stake or marker at
such point would not be situated east of the stake
or marker on Flour Bluff, but on the contrary
would be situated about East Southeast of such
marker.

"If the stake or marker is situated
at a point one mile as near North as possible
from the opening of Corpus Christi Pass and the
Corpus Christi Bay, then such stake or marker
would be almost due east of the stake or marker
on Flour Bluff, but such stake or marker could
not be located due north of such mouth of the
Pass, but on the contrary, would be situated
about north northeast of the mouth of such
Pass."

Section 1 of Senate Bill 317, supra, reads in part:

"Be it enacted by the Legislature of
the State of Texas:

"Section 1. It shall be unlawful for
any person to place, set, use, or have in pos-
session or to have on board any boat, or on any
vehicle, any seine, net or trawl in the waters
of Corpus Christi Bay and Laguna Madre and con-
necting inlets or bayous, lying between a line
on the north running east from a stake or marker
on the shore on the northeasterly point of Flour
Bluff to a stake or marker on Mustang Island, one
mile north of Corpus Christi Pass, and the Nueces-
Kleberg County line on the south; . . ." (Emphasis
ours)

For clarity, we consider your second and third
questions first.

Article 941, P. C. was in effect when Senate
Bill 317 was passed and seems to be in effect at this time.
We are unable to find any notation to the effect that such
Bas been repealed. It may be considered in connection with
Senate Bill 317 in so far as it defines "Corpus Christi Pass"
and "Brazos Santiago Pass". Article 941 P. C. reads in part
as follows:

"Corpus Christi Pass, leading from
Corpus Christi Bay to the Gulf of Mexico; Brazos
Santiago Pass, leading from the Lower Laguna
Madre to the Gulf of Mexico. . . ."

In our opinion these acts should be construed
in pari materia and that it follows that "Corpus Christi Pass"

mentioned in Senate Bill 317 means the pass connecting Corpus
Christi Bay with the Gulf of Mexico. This inference is
supported by the fact stated in your letter, that a point on
Mustang Island approximately north of that pass is almost due
east of Flour Bluff, which Senate Bill 317, supra, indicates
to be true.

Answering your third question, it is our
opinion that the stake or marker on Mustang Island one mile
north of Corpus Christi Pass should be placed at a point on
Mustang Island one mile as near north of said pass as possi-
ble rather than due north of said pass but not on Mustang
Island.

Senate Bill 317 states that such stake or
marker is to be placed on "Mustang Island" (not in the water,
as your letter indicated it will be if the line is run due
north). Mustang Island is a natural object. It is a basic
rule of law that in running land lines, calls for course or
distance yield to calls for natural objects. This rule is
stated in Texas Jurisprudence, Vol. 7 p. 166 (and numerous
authorities there cited), in which it is said:

"Sec. 37. In General. Calls for
natural or artificial objects are less likely to
have been made by mistake, and are not liable to
change in the fluctuations of time like calls for
courses and distances. Frequently artificial
objects are set up by the surveyor which serve
to mark his footsteps. Hence it is a general rule
that when calls for such objects conflict with
calls for course and distance, the former control
in the absence of other evidence." (Emphasis ours)

In answer to your first question, it is our
opinion that the north line of the closed area of Corpus Christi
Bay and Laguna Madre should be determined by running a line from
Flour Bluff to the marker on Mustang Island, located according
to our answer to your third question, rather than being run
due east from Flour Bluff (these points not being the same).
Flour Bluff is a natural object and the marker is located by
reference to two natural objects, i. e. Corpus Christi Pass and
Mustang Island. As is stated above, in running land lines, calls

for natural objects prevail over calls for course or distance. The calls for these natural objects will prevail over the call for a course "east" of Flour Bluff contained in Senate Bill 317.

This rule is commonly applied in boundary suits; however, it has been applied by our Court of Criminal Appeals with reference to a criminal question in Johnson v. State, 244 S. W. 609.

For the above reasons, it is our opinion that by well known rules of construction, Senate Bill 317 is definite enough to be understood with certainty. Consequently, it is our opinion that its constitutionality is not jeopardized by indefiniteness.

Your fifth question asks whether, in the event of a conviction under Senate Bill 317, the net or seine of the defendant should be confiscated and destroyed.

Senate Bill 317 does not answer the question. However, as is observed in your letter, Article 952L-10, Sec. 3, P. C. may be considered. That Article reads in part:

"Sec. 3. When any officer of this State sees any seine, strike net, gill net, trammel net, or shrimp trawl in or on any of the tidal waters of this state where the use of such seine, strike net, gill net, trammel net, or shrimp trawl is prohibited from being used for the purpose of taking fish and/or shrimp, and has reason to believe and does believe that the same is being used or possessed in violation of the provisions of this Act, it shall be his duty to arrest the party using or possessing said seine, strike net, gill net, trammel net, or shrimp trawl and, without a warrant, shall seize such seine, strike net, gill net, trammel net, or shrimp trawl as evidence. It shall be the duty of such officer to deliver such seine, strike net, gill net, trammel net, or shrimp trawl to the County Judge or Justice of the Peace of the county in which it was seized, where it shall be held as evidence until after the trial. If the defendant is found guilty of possessing or using such seine, strike net, gill net, trammel net, or shrimp trawl unlawfully, the Court shall enter an order di-

recting the immediate destruction of such
seine, strike net, gill net, trammel net,
or shrimp trawl by the Sheriff or constable
of the county where the case was tried, and
the Sheriff or constable of the county shall
immediately destroy such seine, strike net,
gillnet, trammel net, or shrimp trawl. . ."
(Emphasis ours)

As we construe the above quoted language,
the Legislature seems to provide for destruction of seines
etc. in the case of a conviction under that particular
article. We are unable to find any provision in Senate
Bill 317 or any other statute which, in our judgment,
would require or permit a destruction of the seines etc.
in the event of a conviction under Senate Bill 317.

Question No. 6 asks whether, in the event
of conviction under Senate Bill 317, the defendant's
fishing license shall be revoked. We find no provision
for such revocation. Senate Bill 317 contains none
Article 952L-10, Sec. 4, P. C. provides for such cancella-
tion, but that provision is expressly confined to con-
victions under that particular article.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By (s) W. T. Curry
Assistant

WTC:BT:fb
APPROVED JUL 6, 1945
(s) Grover Sellers
ATTORNEY GENERAL OF TEXAS

THIS OPINION CONSIDERED
AND APPROVED IN LIMITED
CONFERENCE